cases this afternoon as set forth on the calendar. Madam Clerk, please call the first case for argument. Case number 19-30-68, Western Missouri, United States v. Chimanga Smith. Very well, Ms. Carlisle, the court appreciates your willingness to accept the appointment in this case under the Criminal Justice Act, and you may proceed when ready. Thank you, Your Honor. As the court may recall from Wednesday, there's still construction in my house. I moved to a different spot, hoping it would be better, and I think it is somewhat better, but if you're having difficulty hearing me, I mean, all I can do is ask you to tell me, and I'll certainly mute myself when Mr. Coffey's talking. May it please the court, I'm here on behalf of Chimanga Smith today. There are, I think, three questions before the court today. The first one is whether the detention of Mr. Smith at the come-and-go convenience store in Springfield was valid under the Fourth Amendment. The second one is, assuming that it was, which of course I don't concede, whether the warrantless search of the vehicle that he was found in was permissible under the Fourth Amendment. And the third one is whether he was entitled to an instruction on the lesser-included offense of simple possession of methamphetamine. So I'll take them in order. With respect to the detention, what happened here, as the court's aware I know, is that about an hour before the encounter that resulted in Mr. Smith's arrest, officers saw a the license plates that went to the vehicle, and so they began to initiate a stop, and the vehicle sped away. They discontinued pursuit because of the Springfield police policy, which is a good policy that didn't permit them to pursue someone who's just got a registration violation. An hour later, the same officer who had seen that vehicle was informed by other officers that the vehicle was located at the come-and-go, and he and another two other officers devised a plan to basically to block the vehicle that Mr. Smith was in so that it couldn't go anywhere. And they converged on the come-and-go and did that, and then began to approach the vehicle with guns drawn and forced all the Our contention is that that action of detaining the vehicle in that way was not justified by the information that the officers had at the time they did it. All they knew was that a car driven by someone whose identity they didn't know had fled from them. They didn't know whose car it was because of the registration issue, so it wasn't a situation where you can presume that people are driving their own car. And they had heard apparently that at some point, at some time before, Mr. Smith had been driving that car, and they had heard that Mr. Smith might again have been involved in some potential offenses involving possession of firearms since he was a felon, but there were no warrants out for Mr. Smith, and they didn't really have any information that indicated that he was under United States v. Hughes, which is cited in the brief. What should have happened was a much more measured approach to the vehicle, which would have involved an officer approaching the vehicle and trying to see whether there was some explanation for why it had the wrong plates and issue an appropriate citation. But we don't think that the detention that happened here was sanctioned and basically everything else flowed from that. Well, I don't quite understand. So the car flees from the police at the initial encounter. I don't understand why they're prohibitive of them boxing it in at the come and go to prevent a second fleeing. I mean, it seems to me to be pretty logical that you would do that. Well, I guess the only issue is that they don't know if the same person's in it. We're talking about an hour later. Well, isn't an ounce of prevention worth a pound of cure at that point? You know, I don't know. It just seems like pretty prudent practice to me. If it's fled once, just to block it in so it doesn't flee a second time. Well, I mean, I guess that's, I mean, obviously I don't agree, but I mean, I can see the argument. But I think the problem is, the important problem, the problem that I have with that is there's been a significant passage of time and you don't really know if it's the same person who fled. And if it's not, you know, you don't really have any reason to think that they'll flee again. The car can't flee by itself. So. Well, why isn't there at least reasonable suspicion to believe that the same person is driving the car such that they could do a Terry stop and check it out? Well, first of all, I don't think this was really a Terry stop. I mean, this is a situation where they are blocking the car in and, you know, approaching it with their guns out and everybody get out. That's not really a, that's not a Terry stop situation. But the second issue is, I think, given the lapse of time, whether there really is reasonable suspicion, you know, cars don't commit offenses, people commit offenses, and you don't really know if anyone's committed one here or if the same person is there. But, I mean, assuming for the moment that the detention was proper, I think there's still a significant problem with the search. Because what happened, once they've got the car blocked in, so it's not going anywhere, and they've got all the people out of it, at that point one of the officers said, well, I smell marijuana inside. And so then they say to themselves, oh boy, now we have probable cause and search the car. But the problem there is, you know, this isn't a car that's sitting at the side of the road and if there's nothing in it, you know, we're just going to let people go. This is a car that they have determined has a registration violation. They've stopped it. It's not going anywhere. They've taken all the people out of it. So there's nothing to prevent them from getting a warrant. And that's what they should have done. What about the fact that they saw the gun inside? How do you factor that into their ability to search the car at that point? Well, I think, I mean, I think that's part of the unlawful search. Because the, and as I mentioned in the brief, but I'll emphasize again, the magistrate judge said that shining the flashlight in the car, which was what resulted in seeing the gun, was necessary to see if there were any more people in the car. And that, I mean, that's clearly not what the evidence shows. If you watch the video, which I urge you to do, you have it. Or, you know, even listen, read the testimony of the officers. By the time he did that, everybody was out of the car and they knew it. And they, you know, they had figured out how to unlock the car. So I think, again, that's part of the unlawful search. So that's how it factors in. Why is it a search at all to look in through the windows of a car? Well, it wouldn't be a search if you just, if you just walked over there and looked in. I think when you shine your flashlight in there, though, that's more of an intrusion. And I would say that constitutes a search. Do you have any authority for that proposition? I don't have a case for it. No, your honor. And just to kind of clarify the consequences of the argument, it is true that after he was arrested, according to Officer Gargas, who did not record this conversation, although he recorded all those other interactions with Mr. Smith that evening, Mr. Smith admitted that the gun was his, the methamphetamine was his, and he was selling the methamphetamine. So I think it's clear that had that methamphetamine in the gun not been found, he wouldn't have done that. So I think that if the search argument wins, then it follows that those statements don't win either. Turning for a minute to the issue of the lesser included offense, what the jury had before it was that Mr. Smith had in a small bag about 13 grams of methamphetamine and some plastic bags and a scale. There was certainly, there was evidence that that was more methamphetamine than most users generally have. But the person who testified about that also said, agreed with defense counsel that if you're a methamphetamine user and you have some extra money, you might buy some extra methamphetamine to avoid the danger from multiple transactions. So in addition, the other evidence of intent to deliver was the statement that was made by Gargis. But again, that's a statement that's based only on the word of Officer Gargis. So I think based on that, the jury could have found that what Mr. Smith had was methamphetamine for personal use. And given the general presumption that if the jury could have found a lesser offense, he's entitled to an instruction on it. I would argue that he was entitled to an instruction. If the court has no further questions, I will keep the rest of my time. Very well. You may reserve the balance. Mr. Coffey, we'll hear from you. May it please the court. This is my first time doing this. Hopefully everything will proceed well, other than the fact that I can't see you, but I know your voice. So I think that's not going to be a problem. As I said, my name is Phil Coffey. I'm arguing on behalf of the government in this case. With respect to the stop, I think the first thing we need to understand is the vehicle, when it's located approximately an hour later, it's still in violation of the law. It still has expired tags. Whoever is driving the car, and I think it's reasonable to believe that it's the same person, but it doesn't really matter at this point. Somebody is driving the car. Somebody is driving it illegally, because it's got tags that don't match the car. So whether it's Smith or not doesn't matter at that point. So the car then flees, and they have a right, obviously, to stop the car. The officer referred to it as felony fleeing. I assume that he based the subject it was felony fleeing based on the fact that he knew it was Mr. Smith. He knew once he stopped the car he knew it was Mr. Smith. He knew that Mr. Smith had been associated with that car previously, but more importantly that he had been involved in two incidents, one an assault, one a drive-by shooting. I know Ms. Carlisle in her brief says that evidence was stale, but we're talking roughly two months, and I don't know how that information becomes stale since he hadn't been arrested on it. He was a suspect in it. But regardless, the first issue is the question of whether or not they can pin the car in, and the car has fled, and the policy doesn't allow them to chase the car. So reasonably speaking, that's a common sense move. No damage to the occupants, no damage to the car. We stop a car that has fled from the police, whether it's felony fleeing or misdemeanor fleeing, they have a right to stop the car, and they did it. Okay, once they stopped the car, now they see that Smith is driving, and we already talked about what we knew about Smith. We knew he'd been associated with the car. We knew about these prior incidents. They knew he was a convicted felon. Obviously at that point they had the right to order him out of the car along with the passengers, and they do that, and they search him. They don't find anything. He agrees to the search, but while they're shining the flashlight into the car, they see a firearm. They know he's a convicted felon, and Ms. Carlisle says, I don't have any cases that say shining the flashlight into a car is a search. I don't think she's going to find any because the law in the Eighth Circuit is using a flashlight, and I believe this is the law everywhere. Using a flashlight to eliminate a darkened space does not render that a search. Ample authority on that point. So when they see the firearm, that obviously gives them the right to search the interior of the car, but we had other reasons. We have a passenger who asks for one of the officers to retrieve something from the car coat, and in the coat is a roach, a burnt marijuana cigarette, and when he retrieves the coat, he can smell the odor of drugs inside the car. So that gives them a second reason to search the interior of the vehicle, and that's of course when they find the evidence. That's when they find the map. That's when they find the gun. So realistically, I don't, I know that Ms. Carlisle said she was confused by my argument in her reply where she says that, and I, hopefully the court isn't, but to me this is pretty cut and dried. We had a right to stop the car. We had ample reasons to go inside the car to seize the firearm. We knew he was a convicted felon. Therefore, that evidence is admissible. Any statements he makes after receiving and waiving Miranda warnings is admissible. The government sees this pretty much as an open and shut case. So with respect to the question of the submission of the lesser included offense, this circuit, unlike I think the state court system, which recently went back to like an automatic submission rule where you just submit everything and let the jury pick it out, in this circuit there has to be some basis in the evidence. Simply because it's a lesser included offense doesn't mean you automatically submit. So there has to be some basis in the evidence from which the jury can determine whether or not there's possibility that this was user amounts. Now, the best arguments for the defendant in this case is, well, it wasn't a huge amount of math, and he didn't have any money. You know, our evidence was that, generally speaking, individuals who sell drugs have money, and he didn't have that. But what we did have was we had testimony that this was a dealer amount of math. We had testimony involving baggies. I think I said in my brief two scales, but if I read the record correct, there were actually three scales. One scale in one place, two in another. I don't know if you're a user, you can figure out how much you want to take. You don't need to be measuring it. You have a firearm, which normally is associated with distributors more so than possessors. But I think the key here, and I think that what changes this case from the average case, I mean, you can distinguish certain cases by saying, well, in that case there was more money, or in that case, for example, in one of the cases it cited where they said they should have given the instruction, the defendant testifies, hey, this is a user amount. And I would submit that in that situation, if we had testimony like that, I don't know how you get out of giving the instruction. But we had the opposite here. What we had was the individual telling the police, I sell this stuff, I don't take it. I sell it to earn a little bit of money, but I'm not a user of this substance. Now, the only way Ms. Carlisle tried to get around that is to say, well, the jury maybe didn't have to believe it because that statement, unlike the others, wasn't recorded. My point would be, but it's in evidence. It's up for the jury to decide. And without some contrary evidence, it seems to me that there's simply no basis in the evidence, and that's the test for submitting that lesser instruction. I think obviously it's a much closer question if he doesn't make those statements. But when he makes those statements, he excludes any possibility that that is a user amount rather than a dealer amount. So that's basically, I have extra time left, but that's basically my argument, unless the court has questions. Very well. You're not required to use all of your time. I know that, Your Honor. I just wanted to make sure you didn't have any extra questions. But that concludes my remarks then. Thank you. Well, we'll see. I don't see any questions. Hearing none, we'll hear from Mr. Carlisle and rebuttal. Just a couple of things. I guess, first of all, the suggestion that once they see it's Mr. Smith, then they know that they can get him out of the car. I'm not sure where that comes from. They know Mr. Smith. I mean, Officer Gargus knows Mr. Smith and apparently knows that he's a suspect in some other incidents a couple of months ago. He doesn't know that there are warrants for him because there aren't any. So it's not like he can arrest him for those. And he knows he's a convicted felon. But the last time I looked, you can't be arrested just because you're a convicted felon. So I'm not sure that that really helps. I also didn't hear from Mr. Coppi anything about once the car had been vacated, the officers couldn't have gotten a warrant. I didn't say in my brief and don't say now that they would not probably have been able to get one if they had wanted to. But they didn't. And the point is, one of the things about the Fourth Amendment is, you're supposed to get a warrant. You're not supposed to just say, well, I've got probable cause, so we'll forget about the warrant requirement. Well, what about the automobile exception? Isn't that a uniform rule as opposed to a case-by-case inquiry into whether they could have obtained a warrant for the car? I don't read the automobile cases as saying that. I think as one of them says, the Fourth Amendment doesn't evaporate just because what's being searched is an automobile. I mean, I think the... Doesn't the warrant requirement? No, I don't think so. What's your best case that says that the automobile exception does not apply when the police have time to get a warrant or could have gotten a warrant? Is there any case that says that? I'm looking quickly. Give me just a second. Well, we have your brief. I just thought you might have had something in mind since you're pressing that point. I don't have anything to bring you right now. The other thing that I did want to talk just for a moment about the lesser-included offense issue. I don't think that the cases require that there be contrary evidence. I mean, that would be a violation of the right to prove beyond a reasonable doubt and the rule that, in general, the government has to prove all the elements of its cases. I think what the cases say, the federal cases, and I agree with Mr. Coffey that the Missouri State Court standard leans much closer to submit anything that's requested. But I think the federal statute just looks at what is in front of the jury. And what's in front of the jury here, as Mr. Smith's attorney argued, is, you know, this wasn't that much methamphetamine. There wasn't any money. And given the fact that this particular statement of Mr. Smith's kind of, you know, sort of seals all the elements, but it's the only one Officer Gargis didn't record, the jury was entitled to consider pretty carefully whether that was something that actually happened or whether it was something that wasn't. And so I think that's enough to allow a jury to say, well, we don't have to believe Officer Gargis, and we don't have to believe that this was more than a user about, so he must have intended to distribute it. And that's all I think you need in order to get a lesser included offense instruction. Say, I had one question about that. I haven't read yet the closing arguments in the trial, but did trial counsel for Smith argue that he was not guilty of the drug offense because the evidence didn't show intent to distribute and it could have been just personal use? I think that's right, but let me take a quick look and see. I gather you were not the trial lawyer. I was not the trial lawyer, so I would, yeah, I mean, that's what he argued. It looks like on pages 191 and 192 of that volume of the He says statements in 189, he says statements in the car weren't recorded. 190 talks about, 191 and 192, he talks about the various reasons why there wasn't any evidence of intent to distribute. So that's exactly what he argued. Okay, thank you for your arguments. The case is submitted and the court will file an opinion in due course.